## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MISSOURI PET BREEDERS ASSOCIATION; ) | |
| STARFISH VENTURES, INC. d/b/a ) | |
| Petland of Hoffman Estates; DAN STAR, ) | |
| and JANET STAR; HAPPINESS IS PETS OF ) | |
| ARLINGTON HEIGHTS, INC.; ) | |
| RONALD BERNING; J & J  MANAGEMENT, ) | |
| INC. d/b/a Petland of  Chicago Ridge; ) | |
| and JAMES MACIEJEWSKI, ) | |
| ) | Case No.: |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| COUNTY OF COOK through the Cook ) | |
| County Board of Commissioners; TONI ) | |
| PRECKWINKLE, in her official capacity ) | |
| as President of the Cook County Board of ) | |
| Commissioners; and DONNA ALEXANDER, in ) | |
| her official capacity as Director of the Cook County ) | |
| Department of Animal & Rabies Control; ) | |
| ) | |
| Defendants ) | |
| ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

Plaintiffs, MISSOURI PET BREEDERS ASSOCIATION ("MPBA"), STARFISH

VENTURE, INC. ("Petland Hoffman Estates"), JANET STAR and DAN STAR, HAPPINESS

IS PETS OF ARLINGTON HEIGHTS, INC. ("Happiness"), RONALD BERNING, J & J

MANAGEMENT, INC. ("Petland Chicago Ridge") and JAMES MACIEJEWSKI hereby

complain against the Defendants and allege as follows:

## NATURE OF THE ACTION

1.     This Action challenges the Cook County Companion Animal and Consumer

Protection Ordinance ("Ordinance") that becomes effective on October 1, 2014. Federal District

Courts have enjoined the enforcement of similar ordinances that were enacted by the cities of Phoenix, Arizona and El Paso, Texas.

2.      The Ordinance eliminates nearly all breeders in the United States, who are located outside of Illinois, from benefiting from Cook County's marketplace. This will have a significant impact throughout the United States, including to the Missouri Pet Breeders Association's members, because the state of Missouri has more breeders than any other state.

3.      The Ordinance also bans the Pet Shops (Petland Hoffman Estates, Happiness, and Petland Chicago Ridge) from selling puppies, kittens, and rabbits purchased from even loving, responsible breeders, who are devoted to raising animals the responsible and ethical way.

4.      This Ordinance will put the Pet Shops—*which have collectively been in business more than 50 years without ever receiving a violation associated with selling puppies, kittens, or rabbits*—out of business and cause financial ruin to them and their owners.

5.      Each of the Pet Shops' business is centered around the sale of pure and specialty-breed puppies. Purebred puppies are almost non-existent in animal control centers, humane societies, and rescue organizations. Thus, a customer who desires to purchase a pure or specialty-breed puppy after the Ordinance becomes effective is more likely to go through unlicensed and irresponsible breeders than through a highly regulated Pet Shop.

6.      In prohibiting the purchase of animals from good breeders through reputable pet shops, the Ordinance does not just put these reputable Pet Shops out of business; it also deprives consumers of a key ally in sifting good breeders from bad ones. Furthermore, it drives consumers looking for purebred puppies straight to the very bad actors the Ordinance claims to abhor. It thereby ensures a market for purebred puppies operating without governmental oversight or accountability.

7.      Plaintiffs request declaratory relief that the Ordinance violates the Commerce Clause, fails even a rational basis review under equal protection, is void for vagueness, impairs contracts, and violates Cook County's power as a unit of local government. Plaintiffs further request injunctive relief preventing the county from enforcing the Ordinance as to them.

8.      Because of the significant and irreparable harm that is about to be visited by the Ordinance should it go into effect on October 1, 2014, Plaintiffs respectfully request a temporary restraining order and preliminary injunction to enjoin Cook County from enforcing the Ordinance as to them during the pendency of this litigation.

## **PARTIES**

9.      Plaintiff Missouri Pet Breeders Association ("MPBA") is the nation's oldest and largest professional pet organization founded in 1987 and exists, in part, to advocate for the interests of its members. MPBA is located in Missouri and its members will be affected and injured if the Ordinance is upheld because they will be deprived of the right to continue the sale of puppies, rabbits, and kittens to pet shops in Cook County, Illinois.

10.     Plaintiff Petland Hoffman Estates is a pet store located in Hoffman Estates, Illinois and is subject to the Ordinance.

11.     Plaintiffs Dan Star and Janet Star are the owners of Petland Hoffman Estates and reside in Illinois.

12.     Plaintiff Happiness is Pets is a pet store located in Arlington Heights, Illinois and is subject to the Ordinance.

13.     Plaintiff Ronald Berning is the Owner of Happiness Is Pets of Arlington Heights and resides in Illinois.

14.     Plaintiff Petland Chicago Ridge is a pet store located in Chicago Ridge, Illinois and is subject to the Ordinance.

15.     Plaintiff James Maciejewski is the Owner of Petland Chicago Ridge and resides in Illinois.

16.     Defendant Cook County is a home rule unit of government pursuant to Article VII, Section 6 of the Illinois Constitution of 1970. Defendant Cook County, through the Cook County Board of Commissioners, promulgated and will enforce the Ordinance.

17.     Defendant Toni Preckwinkle ("Preckwinkle") is the President of the Cook County Board of Commissioners and presided over the vote to enact the Ordinance at issue. Defendant Preckwinkle is sued in her official capacity.

18.     Defendant Donna Alexander ("Alexander") is the Director of the Cook County Animal & Rabies Control and is given authority to enforce the Ordinance through her Department. Defendant Alexander is sued in her official capacity.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. This Court has personal jurisdiction over Defendants because they are located in this judicial district.

20.     The Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202.

21.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b).

## FACTS

I.      **Plaintiffs' Businesses**

   A.      **Missouri Pet Breeders Association**

22.     More pet breeders are located in Missouri than in anywhere else in the United States. In fact, it is estimated that Missouri has twice as many breeders as any other state. As the nation's oldest and largest professional pet organization, MPBA provides many benefits for its members such as providing educational seminars and articles, maintaining a list of registered breeders with its organization, and advocating for them. Many of MPBA's members sell animals to pet stores located in Cook County and will be precluded from doing so if this Ordinance is enforced.

**B.      The Pet Shops**

23.     The Pet Shops are small family-operated businesses devoted to the sale of responsibly and ethically raised pure and specialty breed animals. Combined, they have been in business for over half a century.

24.     Happiness is Pets has been in business for 27 years, Petland Chicago Ridge for 20 years, and Petland Hoffman Estates for 8 years.

25.     Significantly, in all their years of operating, the Pet Shops have never received a violation associated with the sale of dogs, cats, or rabbits despite regularly being inspected by the Illinois Department of Agriculture.

26.     The Pet Shops are locally owned and family-operated. Petland Hoffman Estates is owned by Dan and Janet Star (husband and wife), Happiness is owned by Ronald Berning (who runs his stores with his sons), and Petland Chicago Ridge is owned by Jim Maciejewski.

27.     The Petland entities are franchisees of Petland, Inc., a national franchisor in the pet industry.   Happiness is part of a small local chain of pet stores that sell puppies and no other animals.

28.     The Pet Shops are devoted to animal welfare and care. Petland, Inc. is a retail pet industry leader in the area of animal care with ongoing staff training programs, in-store animal husbandry systems and community service programs aimed at placing Homeless pets and curbing pet overpopulation in the community. Over the last 47 years, Petland has advanced by developing state-of-the art standards for its retail Pet Shops. Petland's Director of Animal Welfare Education and the Operations Team visits USDA licensed breeders and distributors to ensure certain standards are maintained. Ronald Berning, the owner of Happiness, was elected to the Illinois Joint Task Force on Pet Shops and Breeders as the sole pet store representative selected by the Director of the Department of Agriculture.

29.     As mentioned above, despite being in business for decades, these Pet Shops have never received a violation arising from the sale of puppies, kittens, or rabbits. The Pet Shops purchase their animals from responsible, licensed, and humane breeders.

30.     In the past several years, Happiness has purchased its puppies from breeders in Amish communities. All breeders maintain proper licensing necessary to operate both at the state and federal level. The breeders with 5 or more breedable female dogs are USDA licensed and have no direct violations pertaining to the care and treatment of their animals. The puppies are provided direct access to outdoor runs where the puppies can socialize and play. Happiness works with its breeders to make sure that the puppies it obtains are provided conditions that exceed all state licensing standards.

31.     The Petland stores purchase their dogs through many responsible breeders located primarily in Iowa and Missouri. Petland is devoted to sourcing and raising healthy animals and working with responsible breeders.

32.     By the time that a customer purchases a puppy from the Pet Shops, they have typically been checked by multiple veterinarians. Local veterinarians come into the Pet Shops weekly to personally examine animals being sold. Consumers are provided with health warranties by the Pet Shops to assure that the animals they are purchasing are healthy. The Pet Shops sell dogs that are up to date on vaccinations, de-wormings, and are microchipped. Customers receive the name, address, and USDA license number (when applicable) of the breeder, information concerning any person/business who harbored the animal, and a written health warranty for the puppy that exceed state standard.

**II.     Ordinance No. 14-2408 (Chapter 10, Animals; Article I, In General; Section 10-13).**

33.     On April 3, 2014, the Board of Commissioners posted Ordinance No. 14-2408 to the public.

34.     A mere six calendar days later (including a weekend), the Cook County Board of Commissioners held a Meeting at which the Ordinance was voted upon and passed.

35.     During the six day period that the Ordinance was available to the public, there was little to no outreach to Plaintiffs or the community by members of the Board of Commissioners to hear objections or opposing testimony.

36.     In fact, the quick turn-around time of passing the Ordinance was raised by members of the Board of Commissioners who remarked at the meeting about the deviation from normal procedures in the failure to send the Ordinance to the Legislation and Intergovernmental Relations Committee for review and amendments prior to voting on it.

37.     In support of the concern about this deviation, Commissioner Elizabeth Gorman made a motion, seconded by Commissioner Joan Murphy, that this Ordinance be referred to the Legislation and Intergovernmental Relations Committee prior to the Ordinance being voted upon so that it could be more thoroughly vetted and considered, with more community input.

38.     That motion was voted down by a vote of 10-5, and the Ordinance was passed unanimously thereafter.

39.     The failure to have the Ordinance even referred to committee for consideration was so remarkable that the following month, on May 21, 2014, Cook County passed a new ordinance requiring that any proposed amendment to an existing ordinance be referred to committee for consideration before being voted upon.  (Ordinance 14-3200).

40.     The Ordinance, titled: "The Cook County Companion Animal And Consumer Protection Ordinance," requires a "pet shop operator" to only sell dogs, cats, or rabbits obtained from:

> (1) an animal control center, animal care facility, kennel, pound or training facility operated by any subdivision of local, state or federal government; or
> (2) a humane society or rescue organization;
> (3) animal obtained from breeders. . .

Subsection (a)(3), which allows the sale of animals obtained from breeders,  restricts the breeders from which a pet shop owner may purchase from. It states:

> (3) No pet shop operator may offer for sale any dog, cat or rabbit obtained from a breeder unless the following requirements are met:
> (i) the breeder holds a valid USDA class "A" license as defined by the Animal Welfare Act, as found in the Code of Federal Regulations, listing all site addresses where regulated animals are located; and
> (ii) the breeder owns or possesses no more than five (5) female dogs, cats or rabbits capable of reproduction in any twelve (12) month period; and
> (iii) no more than five (5) female dogs, cats or rabbits capable of reproduction are housed at the site addresses where the retail animal was born or housed, including animals owned by persons other than the breeder; and . . .

41.     Under USDA requirements, breeders possessing four (4) or fewer female dogs capable of reproduction need not be licensed by the USDA. It is only once a breeder possesses five or more female dogs that are capable of reproduction that the USDA requires the breeder to become licensed.

42.     As such, the Ordinance eliminates any breeder who possesses four (4) or fewer dogs, as those breeders do not maintain USDA licenses, and eliminates any breeder who has a USDA A license, but possesses six (6) or more female dogs capable of reproduction. The Ordinance, therefore, leaves Pet Shop owners to purchase their puppies from breeders who possess exactly five (5) female dogs capable of reproduction.  By limiting to breeders with Class A license, the Ordinance also prohibits the Pet Shops from using USDA Class B license holders (i.e., the breeders who transport animals into Illinois).

43.     The Ordinance also contains an exemption for any animal control centers, animal care facilities, kennels, pounds, training facility operated by any subdivision of local, state or federal government, humane society, rescue organization, or veterinary hospital or clinic licensed pursuant to the Veterinary Medicine and Surgery Practice Act of 2004.

44.     More than 98% of USDA licensed breeders in the United States are located outside of Illinois. In fact, there are only 25 USDA licensed breeders in Illinois. By way of comparison, there are 678 licensed breeders in Missouri and 248 in Iowa. The Pet Shops obtain almost all of their animals from out of state sources.

45.     Happiness and Petland Chicago Ridge obtain 100% of their puppies from out of state breeders and Petland of Hoffman Estates obtains 98% of its animals from out of state. Indeed, most Pet Shops in the state of Illinois obtain a substantial portion of their puppies from other states because there is a very limited supply of breeder-provided animals in Illinois.

46.     The Ordinance bans Cook County Pet Shops from selling animals but it allows the very same animals to be sold by the breeders themselves. In other words, if a breeder wanted to sell a yellow Labrador puppy in Cook County it could do so. However, the Pet Shops are prohibited from selling that same puppy.

47.     In fact, even unlicensed irresponsible breeders can sell directly in Cook County. There are hundreds of unlicensed breeders located in Illinois. The Ordinance imposes no restrictions on them.

48.     The nature of animal sales is such that being physically present is critical for sales to occur. Unlike many goods, you cannot order a puppy, kitten, or a rabbit through the mail. As such, consumers will often want to see an animal before making a purchasing decision. Cook County consumers are not likely to travel into another state to purchase an animal if they can purchase directly from a breeder located in Illinois. Thus, from a practical standpoint, if these breeders want to continue to sell directly into Cook County, they will have to have a physical presence in Cook County (and become licensed) so that their animals can be seen. This is especially true because the Ordinance now prohibits these breeders from utilizing dealers (USDA licensed Class B breeders) to sell their animals to the Pet Shops.  In fact, in December 2013, the USDA underscored the importance of "face to face" contact in the sale of an animal in redefining its own definition of a pet store in its effort to address animal Internet sales:

> **"The buyer, seller, and the pet available for sale must all be physically present at the time of purchase or before taking custody of the animal in order to meet the definition of a "face-to-face" transaction and remain exempt from licensing.  Photos, webcam images, Skype sessions or other electronic means of communication are not a substitute for the buyer or their designee personally observing the animal."[1]**

49.     The Ordinance prohibits Pet Shops from purchasing animals from "dealers" with a USDA Class B breeder license. Dealers who purchase animals and resell them (typically purchasing them from neighboring states and transporting them into Illinois) are required by the USDA to have what is commonly referred to as a Class B license. For example, if a pet store

---

[1] http://www .aphis.usda.gov/publications/animal_welfare/2013/faq_retail_pets_final_rule.pdf

needs certain breeds of dogs, it would contact a dealer who would then source those dogs from various breeders—almost exclusively in other states. The dealer would purchase the animal from a breeder, transport it into Illinois, make sure the animal is up to date on its vaccinations, and then resell it to a local pet store. In short, dealers with a Class B license are a pipeline that allows small Pet Shops to keep inventories of animals available for repurchase.

50.     As these dealers are considered a carrier (they transport animals) and an intermediary (they purchase from other sources and resell them), they must be licensed and inspected pursuant to USDA's rules and regulations. *See e.g.,* Subpart B, 9 CFR § 2.25 (requiring that each "carrier and intermediate handler" be licensed).

51.     As the importation, transportation, and sale of animals into Illinois is highly regulated by law, these dealers serve as a critical source for pet stores to obtain their animals from other states. In addition to the other regulations, expensive animal transport vehicles are required and must be equipped with proper ventilation system and storage.  Drivers must be properly trained in animal care. Obtaining animals is itself a full-time practice because transporters, for example, must be willing to sleep in the transportation vehicle as they cannot leave a van full of dogs unattended while they go and sleep in a hotel. As such, the Ordinance's elimination of Class B license holders as an available source of animals has effectively shut off Cook County from obtaining animals from breeders in interstate commerce.

52.     The Ordinance prohibits Pet Shops from purchasing animals from 962 of the 998 USDA licensed breeders in states surrounding Illinois—96% of the USDA breeding facilities. Also, because the Ordinance eliminates all hobby breeders (i.e., small breeders who breed a few dogs) from selling to Pet Shops, the actual percentage of eliminated breeders is closer to 100%. To demonstrate, all 25 of Wisconsin's breeders are eliminated, all but 3 of Indiana's 119

breeders are eliminated, all but 4 of Iowa's 220 breeders are eliminated, and all but 29 of Missouri's 634 breeders are eliminated.

53.     While the Ordinance effectively cuts off non-Illinois based breeders, it will allow Illinois' hundreds of unlicensed breeders (those with 4 or fewer breedable females) to continue to sell its dogs in Cook County (so long as they are not sold to pet shop) and it will also allow Illinois licensed breeders to sell directly to Cook County consumers (but not through Pet Shops) since they are physically located in Illinois and already licensed under all applicable state and federal standards. In fact, after the Ordinance is effective, Illinois will only have 3 (three) USDA licensed breeders that meet the 5 or fewer female standard that can sell to the Pet Shops. Any breeder with 5 or fewer breedable females cannot be relied upon for a steady source of animals since a female is only capable of producing a limited number of offspring per year, which varies depending on the breed.

54.     From a practical standpoint, these 3 in-state breeders will serve to be the exclusive Illinois source for breeder-provided dogs to all pet shops. The Pet Shops would only have a sporadic and limited supply of puppies that would not come close to meeting the local demands. For example, Petland Hoffman Estates alone sells approximately 700 puppies per year.  In the past two years, it has used almost 400 breeders. In other words, even if 100% of the available breeders sold their dogs into Cook County, it would not come close to meeting even one of the Pet Shop's needs.

55.     As the Pet Shops' business is focused on the sale of pure and specialty breed puppies, animal control centers, humane societies, and rescue organizations cannot provide the Pet Shops with an economically-viable source for sustaining their business. The Pet Shops will be required to close down, employees will have to be laid off, contracts will be violated, and

consumers will have less reliable and responsible source from which to purchase healthy animals from.

56.     Customers go to the Pet Shops because they want a specialty breed of dog where the origins of the dog and breeds are known (i.e., to make sure they are getting a pure-bred breed or to make sure the dog is not partially a pit-bull). By way of comparison, the average selling price of a dog at a Pet Store is approximately $1,200 while the average price at a shelter is around $150.

57.     Effective last year, Illinois passed the so-called "Puppy Lemon Law" that places upon Pet Shops—but exempts not for profit organizations like shelters—an obligation to provide warranties for the puppies that are sold. 225 ILCS 605/3.15(f) provides for remedies to consumers if their dog or cat has illness, parasites, contagious diseases, congenital, or hereditary conditions. Consumers are entitled to warranties, exchanges, and reimbursement of veterinarian bills, and attorney fees. 225 ILCS 605/3.15(g) and (k).

58.     From a practical standpoint, the Puppy Lemon Law means that the expenses associated with a dog or a cat with a heart murmur, bad knees, or other hereditary conditions are all the responsibility of the consumer if purchased from a shelter. However, the financial burden would fall on the pet store if sold privately. Pet shops are required to provide a warranty for all dogs and cats sold.

59.     One of the reasons that the Pet Shops invest in purchasing from responsible breeders is to avoid incurring liability under a warranty. For example, there are many expensive hereditary conditions that a dog can have. By purchasing from known and reliable breeders, Pet Shops will minimize responsibility for future problems. This is a risk that a pet store cannot help control if an animal is obtained from a random source facility such as a shelter. In many cases,

this is the reason that shelter animals end up back in shelters, i.e., someone purchases one and then does not want to undertake the medical expenses to care for it.

60.     The Pet Shops have entered into thousands of warranty/contracts that they cannot honor under the Ordinance. For example, Happiness provides a two-year warranty to consumers if a puppy has certain congenital defects. If such a defect occurs, the consumer is provided with options including "a replacement puppy of equal value." The statutory warranty provides consumers with a right to "exchange the dog or cat for another dog or cat of comparable value chose by the customer." 225 ILCS 605/3.15(g). Animals from shelters are not of equal monetary value as the pure bred animals that have been purchased and which have their breeders identified. The Pet Shops would not be able to source animals that are of equal value as required by Illinois law and their contracts. The rare and unique breeders of animals that have been sold by the Pet Shops simply will become unavailable if the Ordinance becomes effective.

61.     Happiness has entered into exclusive contracts with breeders obligating it to purchase *all* of the puppies produced from approximately 300 dogs. Happiness has spent over $300,000 in developing a network of responsible breeders from which it can source its puppies. In doing so, it purchased over 300 breeding dogs and placed these dogs with twelve responsible breeders located in Indiana. These breeders are all prohibited because although they are USDA licensed, they have more than 5 female breedable dogs. Happiness has entered into an oral agreement with these breeders that prohibits the breeders from selling the puppies from these dogs to anyone but Happiness. It also obligates Happiness to purchase 100% the puppies that are produced from these dogs. If Happiness cannot purchase dogs from these breeders, it will be violating its obligation to do so. It also will lose the entire purpose of its $300,000 investment.

62.     As the Ordinances will force the Pet Shops out of business, they will violate their long term leases and franchise agreements as they are forced to shut down.

63.     Pet stores in general are not the cause of overcrowding in shelters.   This is known because dogs sold at pet stores have microchips placed underneath the skin between the shoulder blades before they are sold. The microchips are transferred to the customer at time of purchase. As a result, when animals end up at shelters, their source is tracked. It is known that only approximately 3% of dogs that end up in shelters are from pet shops on average.

64.     When a consumer makes a purchase from a pet shop, they are making a large financial commitment and therefore are more likely to be invested in their decision to keep an animal. Furthermore, one of the common reasons that an animal is given back to a shelter is due to medical problems. As explained above, the Pet Shops (and all pets stores by law) are now required to provide health warranties for the animals sold. As a result, consumers can force the pet stores to pay for treatment rather than incurring this expense themselves, which discourages an animal from being returned.

65.     Animals sold from Cook County pet shops receive multiple levels of protection to ensure that the puppies are humanely raised, transported, maintained at the pet store, and healthy. First, they are purchased from out-of-state commercial breeders licensed and inspected by United States Department of Agriculture ("USDA") pursuant to the Animal Welfare Act ("AWA"), and not from "puppy mills." They are imported into Illinois in accordance with Illinois state regulations. Their care at the pet store is in turn governed by Illinois statute and regulation, particularly the Illinois Animal Welfare Act.  As explained above, after they are sold, the owners receive a guarantee of health.

66. Faced with a similar ordinance in Chicago, the Chicago Veterinary Medical Association warned that "[t]he elimination of consumer choice through banning puppy and kitten sales in reputable pet stores can result in consumers and pets suffering from a lack of regulation when seeking alternative, unregulated sources outside City of Chicago." See Chicago Veterinary Medical Association Statement regarding City of Chicago Companion Animal and Consumer Protection Ordinance, March 5, 2014.

67. While the Ordinance is apparently designed to stop "animal mills," it is clear that the Ordinance has the opposite effect. "Puppy mills" are defined by USDA's Inspector General as "large-scale dog breeders that failed to provide humane treatment for the animals under their care."[2] Therefore, instead of eliminating these substandard facilities, the Ordinance actually favors their expansion, by eliminating the source of commercially bred puppies in the County that are regulated on multiple levels. These risks are substantial as the Chicago Veterinary Medical Association has opined:

- Shelters often do not know the source of their animals, or the socialization and behavioral history and complete medical problems of these animals;

- By banning the sales of purebred pets in the pet shops, the public will be denied consumer protection in IL Public Act 098-0509;

- A pet sold in a pet store has the greatest chance of receiving the highest quality veterinary care should it become ill within the first year of life as a result of IL Public Act 098-0509; and

- The elimination of consumer choice through banning puppy and kitten sales in reputable pet stores can result in consumers and pets suffering from a lack of regulation when seeking alternative, unregulated sources outside City of Chicago.

## CAUSES OF ACTION

---

[2] See Animal and Plant Health Inspection Service Animal Care Program Inspections of Problematic Dealers, Audit Report, 33002-4-SF, May 2010. USDA notes that "neglected or abused pet animals confiscated from substandard breeding operations are often sent to shelters to provide for their care." Federal Register, Vol. 78, No. 18, September 18, 2013, 57228. www.usda.gov/oig/webdocs/33002-4-SF.pdf.

I.     **COUNT ONE: DECLARATORY RELIEF (COMMERCE CLAUSE)**
       **(ALL PLAINTIFFS AGAINST DEFENDANTS)**

68.     Plaintiffs reallege and incorporate Paragraphs 1-67 as if fully alleged herein.

69.     The Ordinance burdens the flow of interstate commerce and is unconstitutional under the Commerce Clause. U.S. Const. art. 1, § 8, cl. 3 *et seq.*

70.     The Ordinance discriminates on its face by differentiating between in state and out of state pounds, *i.e.,* Pet Shops are prohibited from purchasing animals from out of state pounds. The Ordinance defines "Pound" as one licensed by the Illinois Department of Agriculture. To be so licensed, a pound must be "in this State." 225 ILCS 605/3.

71.     Laws that discriminate against interstate commerce are virtually per se invalid. The locality has a burden of rigorous and strictest scrutiny to justify the law both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake. Cook County cannot meet either of these heavy burdens; the claimed problem of animal "mills" is asserted to be nationwide in scope, not justifying local discrimination, and Cook County has ample regulatory options for combating the problem of "puppy mills" without banning the Pet Shops' sales of animals from effectively all breeders.

72.     The Ordinance has a discriminatory effect by banning local pet shops from selling dogs imported from 98% of America's breeders. This effectively prevents out-of-state breeders, such as those represented by the MPBA from having physical access to market demand for pure- and specialty-breed animals in Cook County. In-state local unlicensed breeders, who may sell puppies (ironically, even if they are "puppy mills"), retain physical access to that market by virtue of being located here. Restricting out of state suppliers' access to local markets is

impermissible discrimination against interstate commerce. Out-of-state breeders are further economically disadvantaged in competition for Cook County consumers because they now must either market themselves remotely or move to Illinois to market directly to its consumers.

73. The Ordinance substantially affects and burdens interstate commerce while also being counter-productive of its aims, depriving consumers of pure and specialty breed animals of a regulated and accountable source of such animals and leaving consumers with the main practical option of going to a significantly less regulated and largely unaccountable breeders.

74. The Ordinance substantially affects and burdens interstate commerce because it eliminates nearly all breeders from which the Pet Shops are permitted to purchase animals from. The impact on interstate commerce was in fact the stated purpose of the Ordinance. As the sponsor of the Ordinance, Commission Fritchy explained as part of its purpose: "The only thing that we can do to impact breeders from out of state is to try to affect regulations that would keep people from selling dogs from breeders from out of state here."

75. The Ordinance further burdens interstate commerce because pet shop owners will have to find breeders that meet the Ordinance's criteria outside of Illinois, which will force them to incur greater transportation costs more frequently. It also intentionally cuts off the flow of animals into Cook County by prohibiting the use of Class B breeders, i.e., those who transport the animals.

76. Even if the law were not discriminatory, its burden on interstate commerce still must not be excessive in relation to the putative local benefits. The Ordinance fails this test as well because the Ordinance substantially affects interstate commerce while actually being counter-productive of its aims, depriving consumers of purebred animals of a regulated and

accountable source of such animals and leaving them with the main practical option of going to significantly less regulated and largely unaccountable brokers.

77.     Plaintiffs are entitled to an order declaring the Ordinance unconstitutional under the Commerce Clause of the United States Constitution.

## II.     COUNT TWO: DECLARATORY RELIEF (EQUAL PROTECTION OF LAWS) (ALL PLAINTIFFS AGAINST DEFENDANTS)

78.     Plaintiffs reallege and incorporate Paragraphs 1-77 as if fully alleged herein.

79.     The Ordinance violates Plaintiffs' right to equal protection of the laws under the United States and Illinois Constitutions. See U.S. Const. Amend. XIV; Ill. Const. art. I, § 2. It violates equal protection rights because it (a) prohibits highly-regulated Pet Shops from purchasing and selling animals that others (i.e., breeders and not for profits) are permitted to sell, (b) for practical purposes, prohibits out of state breeders from selling animals in Cook County when the same practice is permitted by in state breeders, and (c) allows certain Class "A" breeders but not any Class "B" breeders to be a source for animals.

80.     The Ordinance is not a legitimate regulation of a local interest. Concerns about animals "mills" would surely be a national or statewide concern rather than just a local, county problem.

81.     Banning pet stores from selling animals from breeders does not rationally advance the goal of eliminating so-called "mills."

82.     The Ordinance is over-inclusive, in that it bans the Pet Shops from selling animals, regardless of whether they come from reputable breeders that are not "mills." Indeed, the Ordinance bans pet stores from selling even animals purchased from reputable, USDA Class A licensed breeders that simply possess six (6) female dogs capable of reproduction even if they are not "mills."

83. The Ordinance is also under-inclusive, failing to ban the very same sales of from other sources, such as local breeders, retailers that are not a "Pet shop operator" under the Ordinance, internet or other remote sellers, and even animal shelters or "rescue" organizations that, wittingly or unwittingly, can end up buying "puppy mill" puppies and passing them on to consumers. Pet stores are just a small fraction of dog purchases (the ASPCA, itself a backer of pet store bans, estimates only 2-10%), rendering the under-inclusiveness substantial.

84. The Ordinance is not only seriously misaligned with the problem it claims to address, but it is actually counterproductive. The Ordinance prohibits conduct by pet stores, which can be regulated and held accountable, while driving demand to unlicensed brokers, which are virtually impossible to police and which are much more likely to buy from bad breeders.

85. The Ordinance is an irrational and impermissible violation of equal protection.

86. Plaintiffs are entitled to an order declaring the Ordinance unconstitutional under the equal protection provisions of the United States and Illinois Constitutions.

### III.    COUNT THREE: DECLARATORY RELIEF (PREEMPTION) (ALL PLAINTIFFS AGAINST DEFENDANTS)

87. Plaintiffs reallege and incorporate Paragraphs 1-86 as if fully alleged herein.

88. The Ordinance is preempted by the state and federal law.

89. A local law is preempted if the subject is a matter of statewide or nationwide concern and state or federal law either occupies the field or local enactment will conflict with state law.

90. Regulating the conditions under which animals are purchased from breeders may be sold to consumers is a matter of statewide and national concern.

91. The state and federal statutes aimed at regulating those conditions (i.e., the respective Animal Welfare Acts and related regulations) contain numerous provisions designed

to ensure that animals purchased by pet shops and sold to the public come from healthy and safe conditions.

92.    The state and federal statutes would be rendered a nullity in Cook County if animal control centers, humane societies, and rescue organizations are the only permissible sources of dogs for pet shops.

93.    Plaintiffs are entitled to an order declaring the Ordinance preempted by state law.

### IV.    COUNT FOUR: DECLARATORY RELIEF (VAGUENESS) (ALL PLAINTIFFS AGAINST DEFENDANTS)

94.    Plaintiffs reallege and incorporate Paragraphs 1-93 as if fully alleged herein.

95.    Laws are required to be drafted such that regulated parties, as persons of ordinary intelligence, know what is required of them so they may act accordingly. Precisions and guidance, in the form of sufficiently-definite guidelines to govern law enforcement, are also necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. Laws that fail the vagueness test are unconstitutional and may not be enforced.

96.    Laws creating a criminal penalty are subject to greater vagueness scrutiny than laws merely providing for civil penalties.

97.    The Ordinance here is unconstitutionally vague in numerous ways. The Ordinance is not drafted so as to provide fair guidance for parties to understand whether and how the Ordinance applies to them, nor does it provide sufficient precision such that County authorities are disabled from enforcing it in an arbitrary and discriminatory way.

98.    **Applicability Clause:**        The Ordinance states: "Applicability of this section. This section shall apply to all areas within Cook County, Illinois, except those areas which are governed by an ordinance of another governmental entity (which by law may not be superseded by this section)." This is vague because all parts of Cook County are governed by "another

governmental entity," namely the State of Illinois, the United States, and various municipalities. This section is vague because it is unclear about what type of "ordinance" it is referring, i.e., an animal control ordinance, any ordinance? It is unclear why there are parentheses used in this section.

99.    **Lack of Definitions:**    The allowed animal sources are largely undefined. While "pound" is defined, there is no definition of a humane society or most of the other allowed sources in the ordinance. For example, "humane society" is defined in part by Merriam Webster as "a society concerned with the promotion of humane conduct." Everyone can have a difference of opinion as to what constitutes "humane conduct." For example, does the Amish community from whom Happiness obtains its dogs could be considered a humane society? They are humane (they treat the animals well) and are a society (the Amish community). Yet, by not defining terms, the Ordinance leaves the Pet Shops guessing at what is an allowed source. Where there are definitions, they are circular. For instance, "pet shop operator" as defined by the Ordinance "means as provided in 225 ILCS 605/2 of the Animal Welfare Act," which in turn defines "pet shop operator" as "any person who sells, offers to sell, exchange, or offers for adoption with or without charge or donation dogs, cats, birds, fish, reptiles, or other animals customarily obtained as pets in this State." 225 ILCS 605/2.   The Ordinance is also circular in defining its exemption. For instance, a rescue organization is certainly a pet shop operator as defined by the Ordinance and the Animal Welfare Act as a rescue organization "sells, offers to sell, exchange, or offers for adoption with or without charge or donation." The exemption, however, excuses (for example) a rescue organization from the restrictions of the Ordinance.

100.    **Contradictory Punishment Section:**        The punishment section of the Ordinance is vague because it is internally contradictory. Section 10-3 states that "any person

violating **any provision** of this chapter . . . is guilty of a misdemeanor punishable by a fine not exceeding $500.00 or by imprisonment for a period not exceeding six months or both such fine and imprisonment." Two sentences later there is language contradicting the "any provision" clause as it states that a violation of Section 10-13 "shall be subject to a fine of $500 for each violation." On one hand, it appears that the Ordinance appears to take away the threat of incarceration by making a separate rule for Section 10-13 violations, but on the other hand the Ordinance allows imprisonment for the violation of "any provision," including Section 10-13 violations.

101.     Plaintiffs are entitled to an order declaring the Ordinance void for vagueness.

**V.     COUNT FIVE: IMPAIRMENT OF CONTRACTS (CONTRACT CLAUSE) (ALL PLAINTIFFS EXCEPT MPBA AGAINST DEFENDANTS)**

102.     Plaintiffs reallege and incorporate by reference Paragraphs 1-101 as if fully alleged herein.

103.     The Ordinance impairs contractual relationships and is unconstitutional under the Contract Clause. U.S. Const. art. I, § 10, cl. 1.

104.     Plaintiffs have and maintain several contractual relationships, including, but not limited to, their contractual relationships with their landlords through their leases and their contractual relationships with their franchisor through their franchise agreements and contractual relationships with breeders (including breeders who they are not prohibited from purchasing from).

105.     The enactment of the Ordinance will prohibit Plaintiffs from engaging in their core business model—the sale of pure and specialty breed animals.

106.     Without the sale of these animals, Plaintiffs will be forced out of business.

107.    The loss of their business will impair Plaintiffs' current contractual relationships as it will prevent Plaintiffs from fulfilling their obligations thereunder.

108.    While pet stores have been regulated to an extent, the regulation under the Ordinance was not considered at the time Plaintiffs' contracts were made.

109.    If the Ordinance is upheld, the entirety of Plaintiffs' contracts will be affected and the duration of the effects will be everlasting.

110.    Plaintiffs' contracts will undergo total destruction.

111.    The Cook County Board of Commissioners does not have a significant and legitimate public purpose for the Ordinance at issue and the Ordinance does not remedy a broad and general social or economic problem.

112.    The Ordinance is in no way proportional to the degree of impairment Plaintiffs will undergo if the Ordinance is upheld.

113.    The Ordinance is not reasonably necessary to achieve its purported purpose as it is incredibly burdensome on Plaintiffs.

114.    The Ordinance is not reasonably necessary to achieve its purported purpose as it is overly broad and prohibits the purchase of puppies from breeders who are entirely responsible breeders, have never had USDA violations, and are not "puppy mills."

115.    Plaintiffs are entitled to an order declaring the Ordinance unconstitutional under the Contract Clause of the United States Constitution.

## VI.    COUNT SIX: INJUNCTION
## (AGAINST DEFENDANTS)

116.    Plaintiffs reallege and incorporate Paragraphs 1-115 as if fully alleged herein.

117.    Because the Ordinance is unconstitutional, Plaintiffs are entitled to an injunction against Defendants from enforcing the Ordinance as to them. Plaintiffs will suffer irreparable

harm from its unconstitutional enforcement, including the closure of their stores, the loss of intangible goodwill, the requirement to lay off employees, the stigma of having been closed to avoid supposed "animal cruelty," and other similar harms that would be devastating to Plaintiffs.

118.    Furthermore, Plaintiffs will suffer immediate and irreparable injury, loss, and damage if the Defendants are not temporarily enjoined and preliminarily restrained from enforcing the Ordinance as to Plaintiffs.

119.    Plaintiffs are likely to succeed on the merits of its claims or, at the very least, raise serious questions about the constitutionality of the Ordinance.

120.    The balance of hardships tips sharply in Plaintiffs' favor because a temporary restraining order and preliminary injunction would merely place the constitutional questions on hold pending trial, and the failure to issue such preliminary relief would cause Plaintiffs to suffer irreparable injury if the Ordinance is enforced as to them during the pendency of this Action.

121.    The issuance of a temporary restraining order and preliminary injunction is in the public interest because the public is served by enjoining the potentially unconstitutional government conduct while the merits are explored more thoroughly.

122.    Granting a temporary restraining order will serve the interest of preserving the status quo.

123.    Defendants will suffer no damage by the issuance of a temporary restraining order.

124.    Thus, the Court should also issue a temporary restraining order and preliminary injunction pending conclusion of the merits of this Action.

## PRAYER FOR RELIEF

125. Plaintiffs respectfully request:

a. An order declaring the Ordinance unconstitutional under the Commerce Clause of the United States Constitution;

b. An order declaring the Ordinance unconstitutional under the equal protection provisions of the United states and Illinois Constitutions;

c. An order declaring the Ordinance preempted by state law;

d. An order declaring the Ordinance void for vagueness;

e. An order declaring the Ordinance unconstitutional under the Contracts Clause of the United States Constitution;

f. An injunction directed to Cook County, its officers, agents, servants, employees, and attorneys, and any other person acting in concert or participation with any of them, from enforcing the Ordinance against Plaintiffs;

g. A temporary restraining order and preliminary injunction enjoining enforcement of the Ordinance as to Plaintiffs pending the conclusion of the merits of this action;

h. Such reasonable costs and attorneys' fees as are available in law or equity; and

      i.   All such other and further relief to which Plaintiffs may be justly entitled.


Dated: September 8, 2014              Respectfully Submitted,

                                   MISSOURI PET BREEDERS ASSOCIATION
                                   STARFISH VENTURES, INC.; DAN STAR
                                   JANET STAR; HAPPINESS IS PETS OF
                                   ARLINGTON HEIGHTS, INC.,
                                   RONALD BERNING; J & J  MANAGEMENT,
                                   INC. and JAMES MACIEJEWSKI,


                                   By:  /s/ David J. Fish_____
                                      One of their Attorney's

David J. Fish
Monica Fazekas
The Fish Law Firm, P.C.
55 S. Main Street, Suite 341
Naperville, IL 60540
630.355.7590
www.fishlawfirm.com