**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MISSOURI PET BREEDERS ASSOCIATION**, *et. al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 14 CV 6930<br>The Honorable Matthew Kennelly |
| **COUNTY OF COOK**, *et. al.*, | ) ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' 12(b)(1) AND 12(b)(6) MOTION TO DISMISS THE VERIFIED COMPLAINT</u>

RESPECTFULLY SUBMITTED,

ANITA ALVAREZ
State's Attorney of Cook County, Illinois

By: */s/ Jayman A. Avery III*
Jayman A. Avery III
Kent S. Ray
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7780

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MISSOURI PET BREEDERS ASSOCIATION**, *et. al.,* | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  14 CV 6930 |
| | )  The Honorable Matthew Kennelly |
| **COUNTY OF COOK**, *et. al.,* | ) |
| | ) |
| Defendants. | ) |

**TABLE OF CONTENTS**

**I. INTRODUCTION** ................................................................................................1

**II. FACTS** ..............................................................................................................2

**III. THE VERIFIED COMPLAINT** ........................................................................2

**IV. LEGAL STANDARDS** .....................................................................................3

**V. ARGUMENT** ....................................................................................................5

    A. THE VERIFIED COMPLAINT IS GENERALLY DEFECTIVE .........................5

        1. MPBA DOES NOT HAVE STANDING (Rule 12(b)(1)) .................................... 5

        2. PLAINTIFFS FAILED TO PROPERLY PLEAD A CAUSE OF ACTION (12(b)(6)) 8

        3. PLAINTIFFS FAILED TO BRING THE COMPLAINT UNDER §1983 .......10

    B. THE COMPLAINT BY COUNT .......................................................................11

        1. COMMERCE CLAUSE (Count I) ................................................................12

        2. EQUAL PROTECTION OF LAWS (Count II) .................................................... 15

        3. PREEMPTION (Count III) ................................................................. 18

        4. VAGUENESS (Count IV) ................................................................... 20

        5. CONTRACTS CLAUSE (Count V) ................................................................ 23

i

6. INJUNCTION (Count VI)................................................................................... 24

**VI. CONCLUSION**............................................................................................................24

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MISSOURI PET BREEDERS ASSOCIATION**, *et. al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 14 CV 6930 The Honorable Matthew Kennelly |
| **COUNTY OF COOK**, *et. al.*, | ) ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' 12(b)(1) AND 12(b)(6) MOTION TO DISMISS THE VERIFIED COMPLAINT**</u>

NOW COME the County of Cook, ("County"), Toni Preckwinkle, President, Cook County Board of Commissioners, in her official capacity, and Dr. Donna Alexander, Director of the Cook County Department of Animal & Rabies Control, in her official capacity, (collectively "Defendants"), by their attorney Anita Alvarez, State's Attorney of Cook County, through her Assistant State's Attorneys Jayman A. Avery III and Kent Ray, and move this Honorable Court pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Verified Complaint ("Complaint"). For their motion, Defendants state:

**I.    INTRODUCTION.**

The Complaint sets forth supposed harms that will befall the Plaintiffs if the challenged Cook County Companion Animal and Consumer Protection Ordinance ("Ordinance")[1] remains in effect. The Complaint is brought in federal court purportedly because the Ordinance violates federal constitutional provisions. However, the Complaint

---

[1] The Ordinance is set forth in Exhibit A to the Complaint. Pertinent provisions of it are also set forth in the Appendix to this Motion, as well as pertinent provisions of federal statutes and regulations.

erroneously ignores the plain language of the Ordinance, federal statutes, and regulations, and does not state a claim under federal or state law. Moreover, the Ordinance is rationally related to the harms it is intended to address. For the reasons that follow, the Complaint should be dismissed.

## II.    FACTS.

On April 9, 2014, the Cook County Board of Commissioners passed an amendment to the Ordinance which adopted new regulations for the sources of animals from which pet shops could obtain animals for sale. Plaintiffs, Missouri Pet Breeders Association ("MPBA"), Starfish Venture, Inc. d/b/a Petland of Hoffman Estates ("Petland Hoffman Estates"), Dan Star, Janet Star, Happiness is Pets of Arlington Heights, Inc. ("Happiness"), Ronald Berning, J&J Management, Inc. d/b/a Petland of Chicago Ridge ("Petland Chicago Ridge"), and James Maciejewski (collectively "Plaintiffs"),[2] brought a six-count complaint against the Defendants challenging the April 9, 2014 amendment to the Ordinance. Plaintiffs filed motions for temporary restraining order and for preliminary injunction, respectively. On September 11, 2014, the parties agreed, and this Court entered an order, staying the implementation and enforcement of the April 9, 2014 amendment to Ordinance during the pendency of this case until a decision on the merits is made by this Court. Dkt. No. 11. This Court later granted Defendants leave to file an oversized brief. Dkt. No. 17.

## III.   THE VERIFIED COMPLAINT.

Counts I through IV of the Complaint are styled "Declaratory Relief," Count V is styled "Impairment of Contracts," and Count VI is styled "Injunction." In Count I, Plaintiffs

---

[2] Petland Hoffman Estates, Happiness, and Petland Chicago Ridge will also be referred to as "the Pet Shops" where applicable. The Ordinance regulates the Pet Shops, by regulating "pet shops," generally. The Ordinance does not regulate MPBA, and does not regulate the other plaintiffs, except as owners of the Pet Shops.

allege that the Ordinance burdens the flow of interstate commerce and is unconstitutional under the Commerce Clause of the United States Constitution. Complaint, at par. 69. In Count II, Plaintiffs allege that the Ordinance violates their right to equal protection of the laws under the United States and Illinois Constitutions. Complaint, at par. 79. In Count III, Plaintiffs allege that the Ordinance is preempted by state and federal law. Complaint, at par. 88. In Count IV, Plaintiffs allege that the Ordinance is unconstitutionally vague. Complaint, at par. 97. In Count V, Plaintiffs allege that the Ordinance impairs contractual relationships and is unconstitutional under the Contracts Clause of the United States Constitution. Complaint, at par. 103. In Count VI, Plaintiff seeks an injunction against the defendants prohibiting them from enforcing the Ordinance. Complaint, at par. 117.

## IV.    LEGAL STANDARDS.

A motion to dismiss for lack of Article III standing is considered under Rule 12(b)(1). *Muelbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 865 (N.D. Ill. 2006). Unlike a motion to dismiss for failure to state a cause of action pursuant to Rule 12(b)(6), under Rule 12(b)(1), this Court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Capital Leasing Co. v. F.D.I.C.*, 99 F. 2d 188, 191 (7th Cir. 1993); *Fortuna's Cab Service, Inc. v. Camden*, 269 F. Supp. 2d 562, 563-64 (D.C. N.J. 2003). In an analysis of a 12(b)(1) motion, the Court does not accept the factual allegations of the complaint as true. *Fortuna's Cab Service*, 269 F. Supp. 3d at 564. Plaintiff bears the burden of proof as to standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F. 3d 440, 443 (7th Cir. 2009).

Under Rule 12(b)(6), dismissal is proper "if the complaint fails to set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Bell Atlantic v. Twombley*, 550 U.S. 544, 570 (2007). The plausibility standard is not akin to a "probability requirement," but it asks for more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. *Adams v. Indianapolis*, 742 F. 3d 720, 728 (7th Cir. 2014). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 129 S.Ct. at 1949. "*Twombley* and *Iqbal* require more than mere notice." *Adams*, 742 F. 3d at 729. An inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims. *Id.*

This case involves the interpretation of statutes, federal regulations, and the Ordinance. In the federal courts, when a court analyzes an agency's interpretation of an act of Congress, the court's primary concern is to ensure that the agency acts within the bounds of congressional delegation. As long as the agency stays within Congress' delegation, it is free to make policy choices in interpreting the statute, and such interpretations are entitled to deference. *Arizona Public Service Co. v. EPA*, 211 F. 3d 1280, 1287 (D.C. Cir. 2000). The reviewing court must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue. *Chevron U.S.A. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Those traditional tools include an examination of the statute's text, structure, legislative history, and purpose. *Natural Resource Defense Council, Inc. v. Daley*, 209 F. 3d 747, 752 (D.C. Cir. 2000). In applying these tools, the court looks at the language employed by

Congress and assumes that the ordinary meaning of that language accurately expresses the legislative purpose. *DeHart v. Town of Austin*, 39 F. 3d 718, 722 (7th Cir. 1994).

Illinois law requires a reviewing court to evaluate the meaning of a challenged ordinance as it is clearly expressed in its language, and not to infer or imply another meaning. *Norris v. City of Chicago*, 230 Ill. App. 3d 1037, 1043 (1st Dist. 1992). One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole and words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). In addition, if the legislature has expressed its intention in clear and unmistakable terms, one should not look beyond the language of the legislation. *Monat v. County of Cook*, 322 Ill. App. 3d 499, 506 (1st Dist. 2001).

**V.     ARGUMENT.**

**A.  THE VERIFIED COMPLAINT IS GENERALLY DEFECTIVE.**

1.     <u>MPBA DOES NOT HAVE STANDING (12(b)(1)).</u>

In order to have Article III, constitutional standing, an association or organization such as MPBA must have standing either on its own behalf, or on behalf of its members. *Milwaukee Police Association v. Board of Police and Fire Commissioners of the City of Milwaukee*, 708 F. 3d. 921, 926 (7th Cir. 2013). The former requires: 1) an injury in fact; 2) a causal connection between the defendant and the injury (traceability); and 3) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife, Inc.*, 504 U.S. 555, 560 (1992). The latter concept is sometimes known as "associational standing" (*Milwaukee Police Association*, 708 F. 3d. at 926), and the definitive pronouncement on it is

found in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977). With respect to "prudential standing," a court-created, non-constitutional standing concept, the strand relevant to the inquiry here is whether the plaintiff is asserting its own legal rights and not those of a third party. *See Main Street Organization of Realtors v. Calumet City, Illinois,* 505 F. 3d 742, 744 (7th Cir. 2007), *cert. den.*, 553 U.S. 1079 (2008); *Brady Campaign to Prevent Gun Violence United With the Million Mom March v. Ashcroft*, 339 F. Supp. 3d 68, 74 (D. D.C. 2004).

MPBA does not have independent, Article III standing. In *Milwaukee Police Association v. Board of Police and Fire Commissioners of the City of Milwaukee*, an association brought suit claiming that one of its members had been discriminated against because she was not hired as a policewoman. *Id.*, 708 F. 3d. at 923. In considering the association's own standing, the court held that it did not have standing because it only alleged one of its members would be harmed by the City's conduct. *Id.*, 708 F. 3d. at 926-27. Here, like in *Milwaukee Police Association*, MPBA merely alleges that its members will be adversely impacted by the Ordinance. Complaint, at pars. 2, 9, 22. MPBA does not have standing to sue on its own behalf. *See also Brady Campaign*, 339 F. Supp. 3d at 74 (no Article III standing because there was no traceability and no justiciability for any of its members).

With respect to associational standing, in the seminal case of *Hunt v. Washington State Apple Advertising Commission*, the United States Supreme Court established the three-part test that an association must meet to have standing to bring suit on behalf of its members: 1) its members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the

6

claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt*, 432 U.S. at 343; *Ezell v. City of Chicago*, 651 F. 3d 684, 696 (7th Cir. 2011).

In a case strikingly similar to the instant case involving a challenge to a municipal animal ordinance requiring spaying and neutering against nearly identical constitutional arguments, the court held that the associational plaintiff did not meet the first two Hunt elements, and thus, did not have standing to challenge the ordinance. *American Canine Foundation v. Sun*, 2007 U.S. Dist. Lexis 90004, at 6-10 (N.D. Cal. 2007) (unpublished). With respect to the first element, the court ruled that the association had not identified a specific member located within an area to which the ordinance applies. *Id.*, at 8. Likewise, MPBA does not identify a specific member who is located in Cook County, Illinois, *i.e.*, who is subject to the Ordinance, and, in fact, none of its members are subject to the Ordinance. Complaint at pars. 2, 9, 22. With respect to the second element, the court stated that the association had not expressly defined the organization's purpose in its complaint. *Sun*, 2007 U.S. Dist. Lexis 90004, at 9. Here, MPBA's attempt to define its purpose is imprecise at best, and lacking under the principle laid down in *Sun*. *See* Complaint at pars. 2, 9, 22. MPBA does not have associational standing.

MPBA also does not meet the second *Hunt* prong on the face of the Complaint because it is entirely devoid of MPBA's purpose and specific interests it seeks to protect. *See* Complaint, at pars. 2, 9, 22. Thus, MPBA cannot meet the second prong because it is incapable of stating whether any interests are germane to its purpose.

In *Irish Lesbian and Gay Organization v. Giuliani*, the court held that the plaintiff association did not meet the third Hunt prong because the injuries alleged in the complaint suffered by its members would require the participation of individual members in the

lawsuit to establish damages. *Id.*, 143 F. 3d 638, 649 (2nd Cir. 1998). Here, MPBA has not alleged sufficient facts to establish whether or not the participation of individual members in the lawsuit is required. However, when considering the Ordinance requirement under section 10-13(b)(3) (breeders' requirements), it is plainly evident that such individual participation of its members would be required.

MPBA does not have prudential standing, either. It is a basic premise that for purposes of prudential standing and associational standing, one cannot sue in a federal court to enforce someone else's legal rights. *Main Street Organization,* 505 F. 3d at 746. In *Main Street Organization*, the court held that the association of realtors did not meet prudential standing because its members were suing to enforce the property rights of owners of residential property and not its members own rights. *Id.* Importantly, Calumet City's ordinance imposed no duties or sanctions on real estate brokers (*i.e.*, plaintiff's members). *Id.* Here, the Ordinance imposes no duties, sanctions, requirements, or burdens on MPBA or its members. Because MPBA members would not have standing to sue in their own right, MPBA does not have prudential standing, nor can it meet the first element for associational standing.[3] MPBA should be dismissed.

2.    <u>PLAINTIFFS FAILED TO PROPERLY PLEAD A CAUSE OF ACTION(12(b)(6)).</u>

Plaintiffs also fail to state a claim under Rule 12(b)(6) because the Complaint is insufficiently pleaded and should be dismissed.[4] The determination of whether a complaint

---

[3] The majority did not characterize its holding as failure to meet the first element of the *Hunt* test; rather it focused on prudential standing. However, the concurrence would have held that the association did not meet the first requirement of associational standing because its members were only collaterally and not directly affected by the ordinance. Id., 505 F. 3d at 750-51.

[4] Plaintiffs also fail to state a claim in each Count of the Complaint because of legal defects related to the specific causes of action. *See American Canine Foundation v. Sun*, 2007 U.S. Dist. Lexis 90004, at 4 (dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of

properly states a claim upon which relief can be granted, begins with Federal Rule of Civil Procedure 8(a)(2), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555. Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. *Id.*, at 556, n. 3. Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.*, at 570.

The 7th Circuit has recognized and adopted this standard in *Adams v. City of Indianapolis*, 742 F.3d 720. There, the court discussed the differences between notice-pleading and fact-pleading considered in *Twombley* and *Iqbal*. *Adams*, 742 F. 3d at 729. When the 7th Circuit stated that, "the point is that it is necessary to give the defendants notice of the claims against them, not that giving the defendants notice is sufficient to state a claim" (*Id.*), the court was providing guidance to litigants and to the lower federal courts that complaints have to actually state a cognizable claim. Here, not only does the Complaint fail to allege sufficient facts to support any of its legal claims, it is fundamentally, legally flawed.

In the introductory portion of the Complaint, Plaintiffs make a major legal error that prejudices the following, substantive counts alleged against Defendants, ignoring the plain language of applicable federal statutes and regulations. Plaintiffs assert that the USDA requires a Class "A" license for breeders possessing five or more female dogs. Complaint, at par. 41. *See also* 9 CFR 2.1(a)(3)(iii). The Ordinance requires pet stores to purchase from breeders possessing a Class "A" license. Ch. 10, §10-13(a)(3)(i) of the Ordinance. Plaintiffs,

---

sufficient facts alleged under a cognizable legal theory). Here, the Complaint lacks a cognizable legal theory generally, and on each of the counts.

9

however, erroneously state that the Ordinance prohibits purchases from any breeder who possesses four or fewer breeding females because those breeders do not possess such a license and erroneously claim that the Ordinance requires the Pet Shops to purchase animals from breeders who possess exactly five breeding females.  Complaint, at par. 42. Plaintiffs' statement of the USDA law is incorrect.  Although the USDA requires breeders who possess five or more breeding females to obtain a license, it does not prohibit those breeders who possess four or fewer breeding females from obtaining a license.  7 U.S.C. §2133 (The Secretary is further authorized to license, as dealers or exhibitors, persons who do not qualify as dealers or exhibitors within the meaning of this Act); 9 CFR 2.1(c) (A license will be issued to any applicant).  *See also Benigni v. Maas*, 12 F.3d 1102 (1993) (unpublished, 1993 U.S. App. Lexis 31629, at 3 (1993)).   A breeder with fewer than five breeding females who wanted to provide animals to the Pet Shops is welcome to obtain a Class "A" license.  Thus, the Ordinance does NOT eliminate breeders who possess four or fewer female breeding dogs from selling to the Pet Shops.

This legal defect is critical to this Court's analysis of each count of the Complaint. Plaintiffs assert other speculative, unsubstantiated claims in each count, as well.  But the unsubstantiated claims fail to meet the pleading standard accepted in this Circuit, and legal errors identified within this section warrant dismissal of the entire Complaint because it fails to set forth sufficient facts to state a claim.

3.    PLAINTIFFS FAILED TO BRING THE COMPLAINT UNDER §1983.

Plaintiffs also failed to bring their Complaint under §1983.  To bring a constitutional or statutory claim against a state actor, such as Cook County, a plaintiff must bring a claim under 42 U.S.C. §1983.  *Zimmerman v. Wolff*, 622 F. Supp. 2d 240, 244 (E.D. Pa. 2008).  A

cause of action arising directly under the Constitution is not cognizable where §1983 is available. *Id.* In *Zimmerman*, the court dismissed the complaint brought under the Commerce Clause and Supremacy Clause, among other claims, pursuant to Rule 12(b)(6) because the plaintiff did not bring the claim against a state actor under §1983. *Id.*[5] It is axiomatic that the County and the individual defendants are state actors for constitutional purposes. Nevertheless, Plaintiffs did not bring their claim under §1983.

*Fortuna's Cab Service, Inc. v. Camden*, supports dismissal for a slightly different reason. In *Fortuna's Cab*, the plaintiffs filed their action against a municipality for constitutional violations, including the Commerce Clause, under §1983. *Id.*, 269 F. Supp. 2d at 563. The court recognized the procedural propriety of such a challenge when it stated, "[p]laintiffs accurately assert that a municipality may be held liable under §1983 where the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officer." *Id.*, at 565. In other words, *Fortuna's Cab* stands for the proposition that a constitutional claim against a government body is proper only when §1983 is invoked with respect to the state action. Here, plaintiffs failed to invoke §1983, and the Complaint should be dismissed.[6]

## B. THE COMPLAINT BY COUNT.

There are numerous cases from federal courts around the country that establish that the Complaint should be dismissed for failure to state a claim upon which relief can be granted. The vastness and breadth of the discussions and holdings plainly show that

---

[5] The court also denied leave to amend to add a §1983 count because plaintiff's likelihood of success on the merits of his Commerce Clause and Supremacy Clause challenges were futile. *Id.*, at 245. For similar reasons discussed *infra.*, at pp. 12-15, 18-20, Plaintiffs' Commerce Clause (count I) and Supremacy Clause (count III) should be dismissed with prejudice.

[6] The complaint in *Fortuna's Cab* was ultimately dismissed because plaintiffs did not properly state a cause of action under either the Commerce Clause or the Takings Clause. *Id.*, at 566.

Plaintiffs have failed to state a cause of action under any of their legal theories and claims and the Complaint should be dismissed.  Each count will be discussed in turn.

1.    COMMERCE CLAUSE (Count I).

Plaintiffs contend that the Ordinance violates the Commerce Clause of the United States Constitution.  The Commerce Clause grants to Congress the authority, "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." United States Constitution, Sec. 8, Cl. 3.

Specifically, Plaintiffs allege that the Ordinance differentiates on its face between in-state and out-of-state pounds because "pound" is defined as one licensed by the State of Illinois Department of Agriculture, which, in turn licenses pounds located in this State. Complaint, at par. 70 (*citing* 225 ILCS 605/3).  Importantly, none of the Plaintiffs are "out-of-state pounds."  Moreover, the face of the Ordinance does not discriminate against out-of-state pounds because it specifically allows the Pet Shops to obtain animals from a host of facilities "**operated by any subdivision of local, state or federal government**."  Ch. 10, sec. 10-13(a)(1) of the Ordinance (emphasis supplied).  Plainly, this means all levels of government animal control facilities at whatever level of government, not just Illinois pounds.  Plaintiffs' allegation is erroneous because it attempts to single out one source of animals from a list in the Ordinance, ignoring the plain language thereof, in violation of applicable law.  See *DeHart v. Town of Austin*, 39 F. 3d at 722; *Norris v. City of Chicago*, 230 Ill. App. 3d at 1043.

Plaintiffs also do not properly plead a cause of action under the Commerce Clause and this Court should dismiss it with prejudice.  *See Zimmerman v. Wolff*, 622 F. Supp. 2d at 244, 246, 248; *American Canine Foundation v. Sun*, 2007 U.S. Dist. Lexis 90004, at 12, n. 3.

Courts have upheld State statutes regulating animals because Commerce Clause analysis is not even warranted by virtue of the savings clause in the AWA. *See* 7 U.S.C. §2143(a)(8) (Paragraph (1) shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary under paragraph (1)).

In *Zimmerman v. Wolff*, the court held that the Pennsylvania statute did not violate the Commerce Clause and dismissed the complaint because plaintiff would be unable to state a claim under the dormant Commerce Clause. *Id.*, 622 F. Supp. 2d at 246. The court first stated that the Pennsylvania Dog Law (that required kennel owners with more than 25 breeding dogs to have a separate state license) is an exercise of the state's traditional police power in relation to domestic animals. *Id.*, at 245 (*citing Nicchia v. New York*, 254 U.S. 228, 230-31 (1920)). Importantly, the court held that the Pennsylvania law was not subject to the Commerce Clause even if it interferes with interstate commerce because it was specifically authorized by Congress in 7 U.S.C. §2143(a)(8). *Id.* The court held that the savings clause would also save local action from Commerce Clause analysis, as well. *Id.* Under *Zimmerman*, the Ordinance is not subject to Commerce Clause analysis and Count I of the Complaint should be dismissed. *Accord Kerr v. Kimmell*, 740 F. Supp. 1525, 1529 (D.C. Kan. 1990) (Kansas dog breeders' law did not violate Commerce Clause because 7 U.S.C. §2143(a)(8) specifically authorized state and local regulation of animal welfare).

Courts also have upheld municipal ordinances against Commerce Clause challenges, including two municipal animal welfare ordinances. In *DeHart v. Town of Austin*, 39 F. 3d 718, the 7th Circuit affirmed the grant of summary judgment in favor of defendant. *Id.*, at 724. In *DeHart*, plaintiff challenged the town's ordinance that banned the keeping of wild

animals under the Commerce Clause and Supremacy Clause. *Id.*, at 721. With respect to the Commerce Clause, the court held that the ordinance did not effect simple protectionism, but regulated evenhandedly by imposing a complete ban on commerce in wild or dangerous animals within the town of Austin without regard to the origin of the animals. *Id.*, at 723. The court further held that because the ordinance did not discriminate between interstate and intrastate commerce, the incidental burden on interstate commerce was not clearly excessive in relation to the putative local benefits. *Id.*, at 724.

Here, the Ordinance regulates evenhandedly by imposing a regulation on the types of breeders from which the Pet Shops (and all pet shops within the County of Cook, for that matter) can purchase animals without regard to the origin of the animals. Thus, the Ordinance does not discriminate between interstate and intrastate commerce. Further, any burden on interstate commerce is not clearly excessive in relation to the local consumer benefits described in the Ordinance. *See* Ch. 10, sec. 10-1(1) (Protecting the citizens of Cook County from rabies by specifying such preventive and control measures as may be necessary), (4) (Encouraging responsible pet ownership), and (5) (Promoting community and consumer awareness of animal control and welfare).

In *American Canine Foundation v. Sun*, the court held that the ordinance did not unjustifiably discriminate on its face against out-of-state entities and regulated evenhandedly in that it required all dogs owned or kept within the County's jurisdiction be spayed or neutered. *Id.*, 2007 U.S. Dist. Lexis 90004, at 26. Further, the ordinance did not impose significant, if any, burdens on interstate trade or travel. *Id.* The court concluded that such a neutral, locally focused regulation was consistent with the Commerce Clause. *Id.* Here, the Ordinance does not discriminate on its face against out-of-state entities

because it imposes a regulation on the types of breeders from which the Pet Shops (and all pet shops within the County's jurisdiction) can purchase animals without regard to the origin of the animals. Thus, the Ordinance is a neutral, locally focused regulation that does not impose any burden on interstate commerce.

In *Fortuna's Cab Service, Inc. v. Camden*, the plaintiffs challenged the city of Camden's taxicab ordinance and the removal of taxi stands under, among other claims, the Commerce Clause and the court granted defendants' motions to dismiss. *Id.*, 269 F. Supp. 2d at 563. With respect to the Commerce Clause, the court found that each of the taxicab owners and operators were located within the city of Camden and were not out-of-state entities allegedly being discriminated against by the regulations. *Id.*, at 566. The court found that interstate commerce was not implicated by the issues in the case. *Id.*

Irrespective of the erroneous claims of the Plaintiffs, interstate commerce is not implicated in this case, either. The Ordinance regulates pet shops within the jurisdiction of the County. The Pet Shops are operating and located within the County. Contrary to Plaintiffs' claims, the Ordinance does not state or result in favoring in-County, or even in-state, businesses such as breeders or pet shops. The Ordinance does not even regulate breeders, the only out-of-state entities remotely relevant here. Therefore, dismissal of Count I is warranted.

    2.    <u>RATIONAL BASIS (Equal Protection) (Count II).</u>

It can hardly be disputed that the instant Ordinance is subject to the rational basis rule because no fundamental right is at issue and no suspect class is involved. Complaint, at par. 7. *See Greater Chicago Combine and Center, Inc. v. City of Chicago*, 2004 U.S. Dist. Lexis 25706, at 15 (unpublished), *aff'd, Greater Chicago Combine and Center, Inc. v. City of*

*Chicago*, 431 F.3d 1065 (2005). Under the rational basis standard, federal courts do not review the wisdom or desirability of fairly debatable legislative choices, rather, the legislation is presumed valid and will be sustained if the classification is rationally related to a legitimate state interest. *Greater Chicago Combine*, 431 F. 3d at 1072-73. The 7th Circuit held that the City's ordinance prohibiting the keeping of pigeons in residential areas, as opposed to other animals that may be kept in such areas, did not violate the equal protection clause because the adverse health and nuisance concerns generated by pigeons warrants greater or immediate attention in residential areas where people predominantly live. *Id.* The District Court stated even more directly that the City was free to make distinctions as to which animals, or animal breeds, warranted greater attention because of annoyance or danger. *Greater Chicago Combine*, 2004 U.S. Dist. Lexis 25706, at 19. Here, the County likewise is entitled to make distinctions among the sources of animals sold in Cook County in the interest of public health and safety.

The holding and rationale of *Kerr v. Kimmell* also supports the County's position. In *Kerr*, the court recited the well-established rule that legislative solutions will be respected if the distinctions drawn have some basis in practical experience or if some legitimate state interest is advanced. *Id.*, at 1530. Plainly, legitimate state interests are advanced by the Ordinance. *See* Ch. 10, sec. 10-1(1) (Protecting the citizens of Cook County from rabies by specifying such preventive and control measures as may be necessary), (2) (Protecting animals from improper use, abuse, neglect, inhumane treatment and health hazards, particularly rabies), (4) (Encouraging responsible pet ownership), and (5) (Promoting community and consumer awareness of animal control and welfare); Preamble to the April 9, 2014 amendment to the Ordinance (Complaint, at Exhibit A). Importantly, the

distinctions drawn, limiting the source of pets to be sold at retail to government facilities, private shelters, and small (hobby) breeders, are legitimate in light of the dangers of mass-breeding facilities to the animals (such as the inhumane conditions, overcrowding, likelihood of diseases, and the number of animals discarded), not to mention the harm to consumers who purchase such animals. Ultimately, *Kerr* held in favor of the defendants over plaintiff's equal protection challenge to the Kansas dog licensing statute (*Id.*, at 1530), and this Court should do likewise.

The holding in *American Canine Foundation v. Sun* also disposes of Plaintiffs' equal protection challenge, as well. There, the court held that Los Angeles County's stated reasons for enacting the ordinance, to increase the safety of its citizens, to reduce animal overpopulation, and to aid in animal identification and reunification, constituted a rational basis for the legislation at issue. *Id.*, at 20. Here, the County's justifications for the Ordinance, not only those enumerated in Ch. 10, sec. 10-1(1), (2), (4), and (5) of the Ordinance (protecting the public from rabies, protecting animals from improper use, abuse, neglect, inhumane treatment and health hazards, encouraging responsible pet ownership, and promoting community and consumer awareness of animal control and welfare), but also those set forth in the Preamble to the April 9, 2014 amendment to the Ordinance (Complaint, at Ex. A) (limiting the dangers of mass-breeding facilities to the animals (such as the inhumane conditions, overcrowding, likelihood of diseases, and the number of animals discarded), and preventing harm to consumers who purchase such animals), easily justify the Ordinance under rational basis analysis.

Plaintiffs' general equal protection argument and its over-inclusive and under-inclusive arguments can be disposed of summarily. In *Greater Chicago Combine*, the 7th

17

Circuit, using brutally honest language, stated, "we can put this issue to rest by simply acknowledging that a city's decision to address a problem gradually is rational. ... For these reasons, [Plaintiff] cannot show that it is 'wholly impossible' to relate this governmental action to legitimate government objectives, and, as a result, we cannot disturb the ordinance under the equal protection clause." *Id.*, 431 F. 3d at 1072-73. Like the plaintiffs in *Greater Chicago Combine*, the instant Plaintiffs allege that the Ordinance does not completely solve the problems it is intended to address. Complaint, at pars. 81-84. But, as the court in *Greater Chicago Combine* held, that is not a sufficient reason to jettison an ordinance, this Ordinance, because it addresses the problems one at a time.

       3.    <u>PREEMPTION (Count III).</u>

Though Plaintiffs did not specifically raise the Supremacy Clause, their pre-emption challenge under federal law is properly analyzed under that clause. *Zimmerman v. Wolff*, 622 F. Supp. 2d at 244. The Ordinance is not preempted under federal law because of the savings clauses contained in the AWA (7 U.S.C. § 2143(a)(8) and 7 U.S.C. § 2145(b)). The clause in 7 U.S.C. § 2143(a)(8), in its plain language, provides that, "[p]aragraph (1) shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary under paragraph (1)." 7 U.S.C. § 2143(a)(8). 7 U.S.C. § 2145(b) provides, in pertinent part, "[t]he Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this Act, and any State, local, or municipal legislation or ordinance on the same subject." 7 U.S.C. § 2145(b). A plain reading of the Ordinance establishes that it provides standards for the type of breeder who can supply animals to the Pet Shops, that it carries out the purpose of the AWA, and that it covers the subject of

humane treatment of animals. *See*, *e.g.*, Ch. 10, § 10-13(a)(3) of the Ordinance; Ch. 10, sec. 10-1(1), (2), (4), and (5) of the Ordinance. Thus, under the AWA, the Ordinance is not pre-empted. Count III should be dismissed.

Case law supports this conclusion, as well. In *DeHart v. Town of Austin*, the court held that the AWA does not evince an intent to preempt state or local regulation of animal or public welfare. "Indeed, [the savings clauses in] the Animal Welfare Act expressly contemplated state and local regulation of animals." Id., at 722. In *Kerr v. Kimmell*, the court held that the savings clauses cited above show that Congress anticipated that states would remain active in this area of traditional state interest. "Thus, plaintiff's argument that Congress intended to totally occupy the field of animal welfare is belied by the express language of the federal statutes cited above." *Id.*, at 1530. In *Zimmerman v. Wolff*, the court held that plaintiff was not entitled to amend his complaint to add a claim for pre-emption under the Supremacy Clause because the two savings clauses expressly allowed state and local regulation of animals. *Id.*, at 248 (discussing the same savings clauses and *citing Sun*, *DeHart*, and *Kerr*). Finally, the court in *American Canine Foundation v. Sun* stated that the savings clause in 7 U.S.C. § 2143(a)(8) expressly provides for local regulation. *Id.*, at 13-14 (the few cases that have considered whether the AWA preempts local regulation of animal ownership, breeding, or sale, have found no preemption (*citing DeHart* and *Kerr*)).

Plaintiffs have not pointed to any State statute or regulation that preempts the Ordinance. Importantly, Count III is insufficiently pleaded under *Bell Atlantic* and *Iqbal* because it does not contain enough facts to state a cognizable claim. *Adams v. Indianapolis*, 742 F. 3d at 728. Thus, this Court should dismiss Count III and not allow Plaintiffs to replead it. *See Zimmerman*, 622 F. Supp. 2d at 244, 246, 248; *Sun*, 2007 U.S. Dist. Lexis

90004, at p. 12, n. 3.     Moreover, the Ordinance is well within the County's home-rule powers and is not preempted by state statute.

The powers of a home rule entity are broad.  *Evanston v. Create, Inc.*, 85 Ill. 2d 101, 107 (1981).  The County is a home rule entity.  Illinois Constitution, Art. VII, Sec. 6(a); *Chicago Bar Association v. County of Cook*, 102 Ill. 2d 438, 440 (1984).  An ordinance of a home-rule county is valid in Illinois if it pertains to its government and affairs.  *County of Cook v. John Sexton Contractors Co.*, 75 Ill. 2d 494, 508-09 (1979).  An ordinance pertains to the government and affairs of home rule unit where the ordinance relates to problems that are local in nature rather than State or national.  *See City of Chicago v. Stubhub, Inc.*, 2011 IL 111127, ¶22.  The United States Supreme Court has recognized that states have traditional police power in relation to domestic animals.  *Nicchia v. New York*, 254 U.S. at 230-31.  It is axiomatic that a traditional police power regulation would pertain to the County's government and affairs.   Accordingly, the Ordinance is within the County's home-rule powers and is not pre-empted by state law.

4.     <u>VAGUENESS (Rational Basis) (Count IV).</u>

Plaintiffs also challenge the Ordinance based on their claim that it is vague in several ways.  It is not.  In paragraph 98, Plaintiffs assert that the applicability section of the Ordinance (Ch. 10, sec. 10-13(e) of the Ordinance) is vague and confusing because the phrase "ordinance of another governmental entity" could mean the State of Illinois or the United States of America.  This statement is patently ridiculous.[7]

---

[7] The parenthetical in that section of the Ordinance referred to by Plaintiffs in paragraph 98 is plainly a reference to Section 6(c) of the Illinois Constitution that holds that ordinances of municipalities control over ordinances of home-rule counties.   Thus, the meaning of section 10-13(e) is plain and understandable.

When Ch. 10, sec. 10-13(e) of the Ordinance refers to "ordinance," it plainly means a law passed by a municipality and not the State of Illinois or the United States. *See* Black's Law Dictionary, Deluxe Seventh Edition (West 1999), at p. 1125 ("**ordinance**"-"a municipal regulation"). "Municipal" is defined as "of or relating to a city, town, or local governmental unit." *Id.*, at p. 1037. There is no confusion, vagueness, or inability of Plaintiffs, or anyone else, for that matter, to easily understand that section. Plaintiffs' Complaint fails.

In paragraph 99, Plaintiffs assert that the definition section of the Ordinance (Ch. 10, sec. 10-2 of the Ordinance) is vague and confusing because the allowed animal sources are largely undefined, particularly "humane society." Plaintiffs' challenge to the definitions in the Ordinance ignores its plain language. "Rescue organization" is a specifically defined term, and it is contained in the same subsection of section 10-13 (section 10-13(a)(2)) that contains the term "humane society," giving any person of reasonable intelligence fair guidance of one of the sources of pets from which the Pet Shops can obtain animals. Further, the definition of "pet shop operator" is not ill-defined as Plaintiffs claim. By referring to 225 ILCS 605/2, the Ordinance points a person of reasonable intelligence to the definition of that term there, which is itself distinguished from "animal control facility" in that statute, obviously similar to an "animal control center" or "animal care facility" as found in the Ordinance (government-operated sources of animals from which the Pet Shops can legally obtain pets under section 10-13(a)(1) of the Ordinance). Moreover, the definition of "pet shop operator" is itself distinguished from "animal shelter" in that statute, obviously similar to a "humane society" or "rescue organization" as found in the Ordinance (privately-operated sources of animals from which the Pet Shops can legally obtain pets under section 10-13(a)(2) of the Ordinance). Thus, there is no confusion, vagueness, or

inability of Plaintiffs, or anyone else, for that matter, to easily understand these definitions. Plaintiffs are attempting to create a tempest in a teapot. Plaintiffs' Complaint fails.

In paragraph 100, Plaintiffs assert that the punishment section of the Ordinance (Ch. 10, sec. 10-3 of the Ordinance) is contradictory. Plaintiffs' challenge to the punishment section of the Ordinance also ignores its plain language. When section 10-3 refers to "any person violating any provision of this chapter," it means Chapter 10, *i.e.*, the entire Animal Control Ordinance. When section 10-3 later refers to "any person violating or failing to comply with Sec. 10-13 of the chapter," it means only section 10-13. There is no contradiction, vagueness, or inability of Plaintiffs, or anyone else, for that matter, to easily understand that distinction. The Ordinance is not vague, and Plaintiffs' Complaint fails.

Case law also supports the dismissal of this Count. In *American Canine Foundation v. Sun*, the court held that the Los Angeles County spay and neuter ordinance was not unconstitutionally vague because it set forth clear requirements for compliance with the ordinance and for the penalties for non-compliance. *Id.*, at 31. "A party challenging the facial validity of an ordinance on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications." *Id.*, at 29 (*citing Hotel and Motel Association of Oakland v. City of Oakland*, 344 F. 3d 959, 972 (9th Cir. 2003). The instant Ordinance is not vague in any of its applications, let alone in all of them. More importantly, the requirements for compliance and non-compliance are easily discernible. Dismissal of the vagueness Count is warranted.

5.    <u>CONTRACTS CLAUSE (Count V).</u>

Plaintiffs also challenge the Ordinance based on the alleged impairment of contracts. Complaint, at par. 103. In fact, Plaintiffs claim the Ordinance will prohibit them from

engaging in their core business model—the sale of pure and specialty breed animals. *Id.*, at par. 105. The Ordinance does not prohibit Plaintiffs from engaging in their core business model—it specifically allows them to purchase animals from any breeders, without limiting the type of animals such breeders possess. *See* Chapter 10, section 10-13(a)(3). Moreover, the Ordinance does not violate the contracts clause.

The right to contract is subject to such restraints as the state in exertion of its police power may reasonably put upon it. *American Canine Foundation v. Sun,* 2007 U.S. Dist. Lexis 90004, at 28 (*citing Advance-Rumely Thresher Co. v. Jackson*, 287 U.S. 283, 288 (1932)). It is axiomatic that the regulation of animals is the exercise of the state's traditional police power in relation to domestic animals. *Nicchia v. New York*, 254 U.S. at 230-31. In *Sun*, the ordinance did not bar the sale and purchase of spayed and neutered dogs (the instant Ordinance does not ban the sale of breed dogs), as plaintiffs therein had alleged, rather, it regulated them. *Id.*, 2007 U.S. Dist. Lexis 90004, at 28; *see* Chapter 10, section 10-13(a)(3). The ordinance therein, like the instant Ordinance, was enacted in part to increase public safety. *Sun*, 2007 U.S. Dist. Lexis 90004, at 28; *see* Chapter 10, section 10-1(1) and (2). Thus, even if the Ordinance "will impair Plaintiffs' current contractual relationships" (Complaint, at par. 107), the regulation falls squarely within the County's police powers. *See Sun*, at 28. The court in *Sun* dismissed the count of the complaint based on violation of freedom of contract. *Id.* This Court should do likewise.

6.      INJUNCTION (Count VI).

Count VI, for injunctive relief, is improper. An injunction is a remedy, and not a cause of action. *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995). Plainly, Plaintiffs may not maintain, let alone recover, in Count VI.

Moreover, to prevail on an injunction case, Plaintiffs must show that they: have no adequate remedy at law, will suffer irreparable harm, have a likelihood of success on the merits, and, if they meet the previous three threshold requirements, the court may weigh the factors against one another, assessing whether the balance of harm favors the moving party, or whether the harm to the non-moving party or the public is sufficiently weighty that the injunction should be denied. *Ezell v. City of Chicago*, 651 F.3d at 694. Here, irrespective of the balance of harms, Plaintiffs have little likelihood of success on the merits, and Count VI should be dismissed.

## VI.    CONCLUSION.

Plaintiffs here have attempted to pull out all the stops to state a claim in their six-count Complaint, including making unsubstantiated claims, misstating applicable law, and ignoring the plain language of the Ordinance, statutes, and regulations. Nevertheless, the Complaint contains fatal pleading and legal defects that bar relief. For the foregoing reasons, the Complaint should be dismissed with prejudice.

RESPECTFULLY SUBMITTED,

ANITA ALVAREZ
State's Attorney of Cook County, Illinois

By: */s/ Jayman A. Avery III*
Jayman A. Avery III
Kent S. Ray
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7780

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MISSOURI PET BREEDERS ASSOCIATION**, *et. al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 14 CV 6930 |
| | ) | The Honorable Matthew Kennelly |
| **COUNTY OF COOK**, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**APPENDIX**

**APPLICABLE LEGISLATIVE PROVISIONS:**

1.      Ch. 10, sec. 10-13 of the Ordinance.

(a)      A pet shop operator may offer for sale only those dogs, cats or rabbits obtained from:

(1)      An animal control center, animal care facility, kennel, pound or training facility operated by any subdivision of local, state or federal government; or

(2)      A humane society or rescue organization;

(3)      Animal obtained from breeders.  No pet shop operator may offer for sale any dog, cat or rabbit obtained from a breeder unless the following requirements are met:

(i)      The breeder holds a valid USDA class "A" license as defined by the Animal Welfare Act, as found in the Code of Federal Regulations, listing all site addresses where regulated animals are located; and

(ii)      The breeder owns or possesses no more than five female dogs, cats or rabbits capable of reproducing in any 12-month period; and

(iii)      No more than five female dogs, cats or rabbits capable of reproduction are housed at the site address where the retail animal was born or housed, including animals owned by persons other than the breeder; ...

***

(e) *Applicability of this Section*.  This Section shall apply to all areas within Cook County, Illinois, except those areas which are governed by an Ordinance of another governmental entity (which by law may not be superceded by this Section).

2.      Ch. 10, sec. 10-1(1), (2), (4), and (5) of the Ordinance.

The purpose of this chapter is to provide harmonious relationships in the interaction between man and animals by:

(1) Protecting the citizens of Cook County from rabies by specifying such preventive and control measures as may be necessary;
(2) Protecting animals from improper use, abuse, neglect, inhumane treatment and health hazards, particularly rabies;

***

(4)     Encouraging responsible pet ownership;
(5)     Promoting community and consumer awareness of animal control and welfare;

***

3.     7 U.S.C. §2131 of the AWA.

The Congress finds that animals and activities which are regulated under this Act are either in interstate or foreign commerce or substantially affect the commerce or free flow thereof, and that regulation of animals and activities as provided in this Act is necessary to prevent and eliminate burdens upon such commerce and to effectively regulate commerce, in order—
(1)     To insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment;
(2)     To assure the humane treatment of animals during transportation in commerce;

***

The Congress further finds that it is essential to regulate, as provided in this Act, the transportation, purchase, sale, housing, care, handling, and treatment of animals by carriers or by persons or organizations engaged in using them for research or experimental purposes or for exhibition purposes or holding them for sale as pets or for any such purpose or use.

4.     7 U.S.C. §2132(f) of the AWA.

***

(f) The term "dealer" means any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet, or (2) any dog for hunting, security, or breeding purposes.  Such term does not include a retail pet store (other than a retail pet store which sells any animals to a research facility, an exhibitor, or another dealer).

     ***

5.      7 U.S.C. §2133 of the AWA.

The Secretary shall issue licenses to dealers and exhibitors upon application therefor in such form and manner as he may prescribe and upon payment of such fee established pursuant to Section 23 of this Act: Provided, That no such license shall be issued until the dealer or exhibitor shall have demonstrated that his facilities comply with the standards promulgated by the Secretary pursuant to Section 13 of this Act: … The Secretary is further authorized to license, as dealers or exhibitors, persons who do not qualify as dealers or exhibitors within the meaning of this Act upon such persons' complying with the requirements specified above and agreeing, in writing, to comply with all the requirements of this Act and the regulations promulgated by the Secretary hereunder.

6.      7 U.S.C. §2134 of the AWA.

No dealer or exhibitor shall sell or offer to sell or transport or offer for transportation, in commerce, to any research facility or for exhibit or for use as a pet any animal, or buy, sell, offer to buy or sell, transport or offer for transportation, in commerce, to or from another dealer or exhibitor under this Act any animal, unless and until such dealer or exhibitor shall have obtained a license from the Secretary and such license shall not have been suspended or revoked.

7.      7 U.S.C. §2143(a)(1) and (8) of the AWA.

(a)     Promulgation of standards, rules, regulations, and orders; research facilities; State authority.
(1)The Secretary shall promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors.

     ***

(8) Paragraph (1) shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary under paragraph (1).

8.      7 U.S.C. §2145(b) of the AWA.

(b)     The Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this Act, and any State, local, or municipal legislation or ordinance on the same subject.

iii

9.      9 CFR 1.1.

Class "A" license (breeder) means a person subject to the licensing requirements under part 2 and meeting the definition of "dealer" (sec. 1.1), and whose business involving animals consists only of animals that are bred and raised on the premises in a closed or stable colony and those animals acquired for the sole purpose of maintaining or enhancing the breeding colony.

                ***

Dealer means any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of: any dog or other animal whether alive or dead (including unborn animals, organs, limbs, blood, serum, or other parts) for research, teaching, testing, experimentation, exhibition, or for use as a pet; or any dog at the wholesale level for hunting, security, or breeding purposes.  This term does not include: A retail pet store, as defined in this section; any retail outlet where dogs are sold for hunting, breeding, or security purposes; or any person who does not sell or negotiate the purchase or sale of any wild or exotic animal, dog, or cat and who derives no more than $500 gross income from the sale of animals other than wild or exotic animals, dogs, or cats during any calendar year.

***

Retail pet store means a place of business or residence at which the seller, buyer, and the animal available for sale are physically present so that every buyer may personally observe the animal prior to purchasing and/or taking custody of that animal after purchase, and where only the following animals are sold or offered for sale, at retail, for use as pets: Dogs, cats, rabbits, guinea pigs, hamsters, gerbils, rats, mice, gophers, chinchillas, domestic ferrets, domestic farm animals, birds, and coldblooded species.  In addition to the persons that meet these criteria, retail pet stores also includes any person meeting the criteria in sec. 2.1(a)(3)(vii) of this chapter.  Such definitions include—

(1)     Establishments or persons who deal in dogs used for hunting, security, or breeding purposes;
(2)     Establishments or persons, except those that meet the criteria in sec. 2.1(a)(3)(vii), exhibiting, selling, or offering to exhibit or sell any wild or exotic or other nonpet species of warmblooded animals (except birds), such as skunks, raccoons, nonhuman primates, squirrels, ocelots, foxes, coyotes, etc.;
(3)     Any establishment or person selling warmblooded animals (except birds, rats, and mice);
(4)     Any establishment wholesaling any animals (except birds, rats, and mice); and
(5)     Any establishment exhibiting pet animals in a room that is separate from or adjacent to the retail pet store, or in an outside area, or anywhere off the retail pet store premises.

iv

10.     9 CFR 2.1.

(a)(1) Any person operating or intending to operate as a dealer, exhibitor, or operator of an auction sale, except persons who are exempted from the licensing requirements under paragraph (a)(3) of this section, must have a valid license.

***

(3)     The following persons are exempt from the licensing requirements under section 2 or section 3 of the Act:
(i)     Retail pet stores as defined in part 1 of this subchapter;
(ii)     Any person who sells or negotiates the sale or purchase of any animal except wild or exotic animals, dogs, or cats, and who derives no more than $500 gross income from the sale of such animals during any calendar year and is not otherwise required to have a license;
(iii)     Any person who maintains a total of four or fewer breeding female dogs, cats, and/or small exotic or wild mammals, such as hedgehogs, degus, spiny mice, prairie dogs, flying squirrels, and jerboas, and who sells, at wholesale, only the offspring of these dogs, cats, and/or small exotic or wild mammals, which were born or raised on his or her premises, for pets or exhibition, and is not otherwise required to obtain a license. ...;

***

(vii)Any person including, but not limited to, purebred dog or cat fanciers, who maintains a total of four or fewer breeding female dogs, cats, and/or small exotic or wild mammals, such as hedgehogs, degus, spiny mice, prairie dogs, flying squirrels, and jerboas, and who sells, at retail, only the offspring of these dogs, cats, and/or small exotic or wild mammals, which were born or raised on his or her premises, for pets or exhibition, and is not otherwise required to obtain a license. ...;
(viii)Any person who buys animals solely for his or her own use and enjoyment and does not sell or exhibit animals, and is not otherwise required to obtain a license. ...;

***

(c)     A license will be issued to any applicant, ..., when:
(1)     The applicant has met the requirements of this section and sec. 2.2 and 2.3; and
(2)     The applicant has paid the application fee of $10 and the annual license fee indicated in section 2.6 to the appropriate Animal Care regional office for an initial license, ... .

11.     9 CFR 2.3.

(a)    Each applicant must demonstrate that his or her premises and any animals, facilities, vehicles, equipment, or other premises used or intended for use in the business comply with the regulations and standards set forth in parts 2 and 3 of this subchapter. Each applicant for an initial license must make his or her animals, premises, facilities, vehicles, equipment, other premises, and records available for inspection during business hours and at other times mutually agreeable to the applicant and APHIS, to ascertain the applicant's compliance with the standards and regulations.

(b)    Each applicant for an initial license must be inspected by APHIS and demonstrate compliance with the regulations and standards, as required in paragraph (a) of this section, before APHIS will issue a license. ... .